IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY ANN THERESE BUCKEL, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:13-295 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) Magistrate Judge Maureen P. Kelly |
| | ) Re: ECF Nos. 12 and 15. |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Mary Ann Therese Buckel ("Buckel") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 12, 15). For the reasons that follow, Buckel's motion for summary judgment (ECF No. 12) will be denied, the Commissioner's motion for summary judgment (ECF No. 15) will be granted, and the Commissioner's decision will be affirmed.

### II. PROCEDURAL HISTORY

Buckel received SSI benefits as a child. (R. at 52). Her benefits were subsequently terminated because of her enrollment in a school that provided training in the area of cosmetology. (R. at 52, 562). On November 8, 2010, she protectively applied for disability insurance benefits and SSI benefits under Titles II [42 U.S.C. §§ 401-433] and XVI of the Act.

1

(R. at 13, 142, 196). Less than two weeks later, Pennsylvania's Bureau of Disability Determination ("Bureau") denied the application for disability insurance benefits on the ground that Buckel had not worked enough quarters to be insured for benefits under Title II. (R. at 79-81). The Bureau denied the application for SSI benefits on January 13, 2011, after concluding that Buckel was not statutorily "disabled." (R. at 82-86). Buckel responded on January 21, 2011, by filing a request for an administrative hearing. (R. at 89).

On February 1, 2012, a hearing was held before Administrative Law Judge ("ALJ") David G. Hatfield. (R. at 28). Buckel, who was represented by counsel, appeared and testified in Erie, Pennsylvania.[1] (R. at 13, 32-58). Susan Ann Shumack ("Shumack"), Buckel's mother, also testified at the hearing. (R. at 59-63). The ALJ presided over the hearing from Mars, Pennsylvania, by means of an electronic video-conferencing apparatus. (R. at 13). James W. Primm ("Primm"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. (R. at 65-69). In a decision dated February 24, 2012, the ALJ determined that Buckel was not "disabled" within the meaning of the Act. (R. at 13-24).

On March 20, 2012, Buckel sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 9). The Appeals Council denied the request for review on August 1, 2013, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1).

Buckel commenced this action on September 26, 2013, seeking judicial review of the Commissioner's decision. (ECF No. 1). Buckel and the Commissioner respectively moved for

---

[1] Buckel testified that her married name was Mary Ann Therese Dewey, and that "Buckel" was her maiden name. (R. at 32-33). She apparently used her maiden name when she applied for SSI benefits so that the Bureau would link her application with the benefits that she had received as a child. (R. at 33). The Court will refer to her as "Buckel," since that is the name appearing in the caption of her Complaint. (ECF No. 1).

summary judgment on February 3, 2014, and April 1, 2014.[2] (ECF Nos. 12, 15). In accordance with 28 U.S.C. § 636(c)(1), the parties have given their consent to have this matter resolved by a United States Magistrate Judge. (ECF Nos. 10-11).

### III.    STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

---

[2] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Federal Rule of Civil Procedure 56. Banks v. Shalala, 43 F.3d 11, 13-14 (1st Cir. 1994); Flores v. Heckler, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." Sumler v. Bowen, 656 F. Supp. 1322, 1330 (W.D. Ark. 1987).

3

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Secretary of Health & Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. Stewart v. Secretary of Health, Education & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. Weir on Behalf of Weir v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

4

> limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 67 S. Ct. 1575 (1947), the United States Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

Id. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44, n.7 (3d Cir. 2001). Thus, this Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

5

## IV. THE DECISION OF THE ALJ

In his decision, the ALJ determined that Buckel had not engaged in substantial gainful activity subsequent to the date of her application.[3] (R. at 15). Buckel was found to be suffering from a seizure disorder, asthma, depression, borderline intellectual functioning, back pain, an iron deficiency, high blood pressure, and obesity. (R. at 15-16). Her seizure disorder, asthma, depression, and borderline intellectual functioning were deemed to be "severe" under the Commissioner's regulations. (R. at 15); 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Buckel's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-18).

In accordance with 20 C.F.R. §§ 416.945-416.946, the ALJ assessed Buckel's "residual functional capacity"[4] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she must avoid exposure to workplace hazards such as heights and moving or dangerous machinery. The claimant should avoid exposure to temperature extremes, gases, chemicals, and fumes. She is further limited to simple tasks involving little to no judgment.

(R. at 19). Although Buckel had previously worked on a part-time basis, that work activity did not constitute "past relevant work"[5] under the Commissioner's regulations. (R. at 22, 65).

---

[3] When she applied for benefits, Buckel listed June 22, 1995, as her alleged onset date. (R. at 142). Nonetheless, SSI benefits cannot be awarded on a retroactive basis. 20 C.F.R. § 416.335. During the course of the administrative proceedings, Buckel did not challenge the Bureau's determination that she was not insured for disability insurance benefits under Title II. (R. at 79-81).

[4] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Hartranft v. Apfel, 181 F.3d 358, 359, n.1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[5] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

Consequently, the fourth step of the sequential evaluation process was resolved in Buckel's favor. (R. at 22).

Buckel was born on February 15, 1989, making her twenty-one years old on her application date and twenty-three years old on the date of the ALJ's decision. (R. at 33). She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). Buckel had a high school education and an ability to communicate in English. (R. at 195, 199-200); 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Buckel could work as a vehicle cleaner, greeter, or ticket taker. (R. at 23). Primm's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[6] (R. at 66-67).

## V. DISCUSSION

The Individuals with Disabilities Education Act ("IDEA") [20 U.S.C. § 1400 *et seq.*] conditions a State's receipt of federal financial assistance on its compliance with certain statutory mandates. 20 U.S.C. § 1412(a). Among the conditions contained in the IDEA is a requirement that every "child with a disability" be provided with an "individualized education program" ("IEP"). 20 U.S.C. § 1412(a)(4). An IEP must include information pertaining to a disabled child's ability to reach academic goals by adhering to an educational regimen tailored to his or her specific needs. 20 U.S.C. § 1414(d). The documentary record indicates that an IEP was designed for Buckel during the course of her academic career. R. at 162-181. At the hearing, Shumack testified that Buckel's learning disability had been caused by "lead paint poisoning from the walls [of their] apartment." (R. at 62-63).

---

[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." Boone v. Barnhart, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005).

7

During the 2006/2007 school year, Buckel was a senior at Central High School. (R. at 318). She made some money by working as a part-time food server in the school cafeteria. (R. at 39-40, 201, 208). Dr. LaMar Neal performed a neuropsychological evaluation of Buckel on December 15, 2006. (R. at 318-329). The Wechsler Adult Intelligence Scale-III ("WAIS-III") test was administered to Buckel. (R. at 320-321). That test measures an individual's intelligence quotient ("IQ") in three different areas. In a written report discussing the results of the evaluation, Dr. Neal made the following observations about Buckel's performance on the WAIS-III test:

> On the WAIS-III, Ms. Buckel obtained a Verbal IQ value of 69 and Performance IQ of 80, yielding a Full Scale IQ value of 72. The results placed her general intellectual ability at the borderline range, scoring at approximately the 3rd percentile. She did have a significant split between her verbal and performance abilities, favoring the visual-manipulative skills. However, this split occurs at a rate of approximately 1/3 in the general population. It is most likely of little clinical significance. Certainly, she will do better with hands-on tasks versus verbal tasks.

(R. at 321). Describing Buckel's "general intellectual ability" as being "somewhat limited," Dr. Neal noted that individuals with similar "intellectual test scores" usually worked in "unskilled"[7] and "semi-skilled"[8] occupations. (R. at 321).

Despite the existence of her learning disability, Buckel graduated from Central High School on June 10, 2007, with a grade point average of 2.586. (R. at 195). She was ranked 90th

---

[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[8] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

in a graduating class consisting of 173 students. (R. at 195). Buckel later enrolled in an educational program offered at the Hiram G. Andrews Center in Johnstown, Pennsylvania. (R. at 37, 391). After only two weeks, an unspecified "incident" resulted in Buckel's withdrawal from the program. (R. at 37, 54).

Between her high school graduation and the fall of 2008, Buckel worked as a part-time cashier for a Dollar General store and a Taco Bell fast-food restaurant. (R. at 38-40, 201, 208). She testified that her employment at both establishments had been terminated because of her inability to competently operate a cash register. (R. at 39-40). At some point, Buckel enrolled in a school that provided training in the field of cosmetology. (R. at 52-53). Her enrollment resulted in the termination of her preexisting SSI benefits. (R. at 52, 562). Although she encountered some difficulties along the way, Buckel eventually completed the cosmetology program.[9] (R. at 52-53, 562). In any event, Buckel was unable to continue working as a cosmetologist because of the risks that her seizures posed to individuals seeking her services. (R. at 57). The resulting situation ultimately caused Buckel to reapply for SSI benefits. (R. at 562).

Dr. Nghia Van Tran, a non-examining medical consultant, opined on December 29, 2010, that Buckel was physically capable of performing a range of "medium"[10] work that did not involve exposure to temperature extremes, wetness, humidity, fumes, odors, gases, poor ventilation, machinery, heights, or other workplace hazards. (R. at 75-77). The ALJ relied on Dr. Van Tran's opinion in determining Buckel's residual functional capacity. (R. at 19, 21-22). In addition to the functional limitations identified by Dr. Van Tran, the ALJ accommodated

---

[9] Buckel testified that she had "passed" the program only because the administrators of the cosmetology school had felt badly about her situation. (R. at 52-53).
[10] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

9

Buckel's "borderline intellectual functioning" by restricting her to the performance of "simple tasks involving little to no judgment." (R. at 19). The ALJ specifically observed in his decision that no treating or examining physician had found Buckel to have functional limitations extending beyond those included within his residual functional capacity assessment. (R. at 21). Every limitation found by the ALJ was conveyed to Primm at the hearing.[11] (R. at 19, 65-66). In response to a hypothetical question describing an individual with the relevant abilities and limitations, Primm testified that such an individual could work as a vehicle cleaner, greeter, or ticket taker. (R. at 66-67). The testimony given by Primm satisfied the Commissioner's burden of production at the fifth step of the sequential evaluation process. Johnson v. Commissioner of Social Security, 529 F.3d 198, 205-206 (3d Cir. 2008).

Buckel challenges only the ALJ's finding at the third step of the sequential evaluation process. She contends that the ALJ erred in determining that she was not *per se* "disabled" under Listing 12.05C. (ECF No. 13 at 3-8). Given that Buckel raises only a discrete issue in support of her motion for summary judgment, the Court's inquiry in this case is quite narrow.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287 (1987); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. Sullivan v. Zebley, 493 U.S. 521, 530-531, 110 S. Ct. 885

---

[11] A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony makes reference to all of the claimant's functional limitations. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not described, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. Ramirez v. Barnhart, 372 F.3d 546, 552-555 (3d Cir. 2004).

(1990).  An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria.  Id. at 530.  An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing.  Id. at 531.  The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability.  Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992).

The Listing at issue in this case is Listing 12.05C, which is described in the Commissioner's regulations as follows:

> 12.05  *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (emphasis in original).  At the age of seventeen, Buckel received a verbal IQ score of 69 on the WAIS-III test.  (R. at 318, 321, 326).  The ALJ and Buckel's attorney specifically discussed that score at the hearing.  (R. at 57-58).  Since Buckel's seizure disorder, asthma and depression were all found to be "severe," Buckel successfully demonstrated that she had "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Markle v. Barnhart, 324 F.3d 182, 188 (3d Cir. 2003).  In light of these factors, Buckel maintains that the ALJ should have found her to be *per se* disabled.  (ECF No. 13 at 3-8).

In determining that Buckel's impairments did not meet or medically equal Listing 12.05C, the ALJ stated that Buckel "ha[d] no adaptive deficits of functioning."  (R. at 18).  The

ALJ supported his assertion by pointing out that Buckel had successfully completed high school, that she was "able to read and do mathematics," that she had previously performed the duties of some part-time jobs, and that she regularly "care[d] for two young children." (R. at 18). Without specifically mentioning the portion of Listing 12.05C referring to "deficits in adaptive functioning," Buckel takes issue with some of the ALJ's observations. (ECF No. 13 at 4-8).

A claimant attempting to establish the existence of a *per se* "disability" under Listing 12.05C must demonstrate that "the *mental retardation* was initially manifested during the developmental period." Markle, 324 F.3d at 187 (emphasis added). While correctly maintaining that her *low verbal IQ score* was obtained during the developmental period, Buckel overlooks the fact that she has *never* been found to be suffering from "mental retardation." (ECF No. 13 at 7). Indeed, Buckel did not even *allege* that she suffered from "mental retardation" when she applied for benefits. (R. at 200). Dr. Neal found Buckel's "general intellectual ability" to be only "somewhat limited." (R. at 321). He suggested that she would be able to perform "unskilled" or "semi-skilled" work. (R. at 321). The evidence relied upon by Buckel does not support her allegation of *per se* disability.

"[S]ignificantly subaverage general intellectual functioning" must come "*with* deficits in adaptive functioning" in order to meet or medically equal Listing 12.05C. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (emphasis added). Buckel contends that the ALJ mischaracterized the evidence in premising his decision on her occupational and child-care activities. (ECF No. 13 at 5-6). In advancing that argument, however, Buckel attempts to divorce the relevant functional limitations from her "borderline intellectual functioning." At the hearing, Buckel testified that she frequently went to her mother's house with her children while her husband was working. (R. at 34-35). Nonetheless, Buckel's preference to have another adult

present during her time with her children was attributable to concerns that a *seizure* would temporarily incapacitate her and render her incapable of providing the necessary care or supervision. (R. at 48). In the same vein, Buckel's *seizure disorder* prevented her from pursuing a career as a cosmetologist. (R. at 57). Although Buckel's intellectual impairment may have caused her to fail the test that she needed to pass in order to obtain a driving permit, the testimonial record suggests that her *seizure disorder* forced her to prematurely abandon her pursuit of a driver's license. (R. at 36). Buckel cannot combine the effects of her seizure disorder with the effects of her intellectual impairment in order to establish the existence of a *per se* disability under Listing 12.05C. Sullivan, 493 U.S. at 531 ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment.").

The Court acknowledges that Buckel encountered some difficulties while trying to operate cash registers, implement complex cooking instructions, and construct toys for her children.[12] (R. at 38-40, 55-57). Those difficulties, however, are not indicative of *disabling* "mental retardation." Buckel testified that her "learning disability" would not prevent her from stocking shelves on a full-time basis. (R. at 41). When asked about that possibility, she suggested that a *back impairment* would prevent her from maintaining such a job. (R. at 41). The documentary and testimonial evidence simply fails to substantiate Buckel's assertion that she was *per se* disabled by "mental retardation" during the period of time elapsing between her protective filing date and the date of the ALJ's decision.

---

[12] Buckel contends that, because of her intellectual impairment, she "must have her husband schedule her appointments." (ECF No. 13 at 6). The testimonial record does not provide much support for that assertion. At the hearing, Buckel merely testified that she frequently *forgot* to schedule routine medical appointments. (R. at 55). She points to nothing in the record which suggests that forgetfulness can be equated with "mental retardation."

## VI. CONCLUSION

Since the Commissioner's factual findings are "supported by substantial evidence," they are "conclusive" in the present context. 42 U.S.C. § 405(g). Buckel's motion for summary judgment (ECF No. 12) will be denied, and the Commissioner's motion for summary judgment (ECF No. 15) will be granted. The Commissioner's decision denying Buckel's application for SSI benefits will be affirmed. An appropriate order will follow.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE


cc: All counsel of record via CM/ECF